## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION
## CASE NO.  4:15-cv-00033-HLM

ERIN BISHOP, HOLLIE DAVIS, ASHLEY    )
OWENS, CHARLSIE BROOME, AMANDA   )
ALBERTSON, KASEY GREEN,                 )
ELIZABETH CLARK, TYLER WILLIAMS,   )
BRANDON DYER, CHELSEA              )
BREWINGTON, and JOSEPH HINCHMAN, )
Individually and on Behalf of All Others     )
Similarly Situated,                      )
                                     )
          Plaintiffs,            )
                                     )
v.                                    )
                                   )
                                   )
SHORTER UNIVERSITY, INC.         )
                                   )
          Defendant.          )

_____

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS, AND INCORPORATED MEMORANDUM OF LAW

## I.    INTRODUCTION

The Court previously granted preliminary approval of the proposed

Settlement Agreement (hereinafter, "Settlement") reached by and between

Consumer Plaintiffs ("Plaintiffs") and Defendant Shorter University, Inc.

and (hereinafter, the "Shorter") in this case. *See* ECF No. 86 (Preliminary

Approval Order). Notice of the Settlement has now been disseminated to Class Members pursuant to the Notice Program set forth in the Settlement Agreement. By this motion, Plaintiffs respectfully ask the Court to grant final approval to the Settlement, reached after arms-length negotiations under the supervision of a highly-qualified mediator. The Settlement is fair, reasonable and adequate and it meets and exceeds the established legal standards governing final approval. Fed. R. Civ. P. 23(e)(2). The Settlement provides significant benefits to the Settlement Class Members that are well-tailored to the nature of the harm alleged. In support of this memorandum, Consumer Plaintiffs submit herewith the Settlement Agreement and attachments (Exhibit 1) and the Declaration of the Settlement Administrator (Exhibit 2). Plaintiffs also cite – and for ease of reference attach as an exhibit to this brief – the Declaration of John A. Yanchunis that was filed in support of Plaintiffs' preliminary approval motion (Exhibit 3), and the Declaration of John A. Yanchunis in support of Plaintiffs' fee application (Exhibit 4).

Shorter has established a cash fund of $175,000 in order to pay the following:

(A)    $66,000 for all eligible Class members to receive Identity Guard's ® "Total Protection" Service for a one year period;

(B)   Reimbursement of Out-of-Pocket expenses capped at $175.00 per member and reduced pro rata if necessary. This benefit includes up to 5 hours of documented time at $15 per hour and $15 per hour for up to 2 hours of undocumented time;

(C)   Attorneys' fees, costs, and expenses of Class Counsel, subject to Court approval, up to the sum of $65,000.00. (As of February 16, 2017, the Total advanced and unpaid costs by Class Counsel, and all others who made an appearance in this matter on behalf of the Plaintiffs, is $42,317.84.);

(D) $1,000.00 as a service award to each named Plaintiff for their service as Class Representatives;

(E)   Notice and administrative costs in the amount of $18,000.00.

As of September 15, 2017, sixteen claims have been submitted and no class member has opted out of the Settlement. *See* Exhibit 2, Declaration of Settlement Administrator. To date, no objections have been submitted. *See* Exhibit 4, Declaration of John A. Yanchunis.

## II.   RELEVANT BACKGROUND

## A.   The Data Breach

In September 2014, an unauthorized individual gained access to the PHI and PII of current and former Shorter University students.   After discovering the theft, Shorter University announced that it had been the victim of a data breach by third-party intruders and notified some of the current and former students by letter. Plaintiffs claim that Shorter University did not adequately protect their PHI and PII and that Shorter University delayed in providing notice of the data breach. Shorter University denies any wrongdoing, and no court or other judicial entity has made any judgment or other determination of any wrongdoing.

**B.     Plaintiffs' Claims and Shorter's Motion to Dismiss**

After Shorter University announced the breach, Plaintiff Erin Bishop filed her Class Action Complaint on February, 20, 2015 [Doc.1]. Plaintiffs Erin Bishop, Hollie Davis, Ashley Owens, Charlsie Broome, Amanda Albertson, Kasey Green, Elizabeth Clark, Tyler Williams, Brandon Dyer, Chelsea Brewington, and Joseph Hinchman filed their First Amended Class Action Complaint on February 27, 2015 [Doc. 3.] ("Complaint"). In their Complaint, Plaintiffs allege various claims against Defendant Shorter University, Inc. ("Shorter University") arising out of the theft of student records stored on site in September 2014, including claims of Negligence, Breach of Implied Contract, Breach of Fiduciary Duty, and Negligent

Misrepresentation. Following briefing on Shorter University's motion to dismiss, the Court issued an Order dismissing Plaintiffs' Breach of Implied Contract and Negligent Misrepresentation Counts as well as Plaintiffs' claim for "earmarked damages" and punitive damages, without prejudice. [Doc. 22]. The remaining claims survived the Motion to Dismiss. [Doc. 22].

## C.    Settlement Negotiations and Preliminary Approval

The parties engaged in two voluntary mediations on February 10, 2016 and April 19, 2016, overseen by Rodney A. Max of Upchurch, Watson, White, and Max. The Parties did not, however, reach an agreement in principle on the material terms of a class action settlement during either mediation.   Thereafter, the parties had direct settlement discussions where a compromise was reached.

The proposed Settlement is reasonable. The Settlement confers significant monetary benefits and preventative relief in the form of financial account and personal information monitoring services. These benefits compare favorably with those of other settlements in data breach class actions that have been approved by courts. *See, e.g., In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *1 (D. Minn. Nov. 17, 2015) (approving settlement that provided $10 million settlement to pay for losses and time spent as a result

of Target data breach, and injunctive relief, but no relief to address future harm); *In re Heartland Payment Sys., Inc. Customer Data Security Breach Litig.*, 851 F. Supp. 2d 1040, 1048-1069 (S.D. Tex. 2012) (approving settlement that provided up to $2.4 million to pay for out-of-pocket losses but no monitoring services); *In re Countrywide Financial Corp. Customer Data Security Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *1-4 (W.D. Ky. Dec. 22, 2009) (approving settlement that provided up to $1.5 million to pay out-of-pocket costs, up to $5 million to pay identity theft losses, and 2 years of free credit monitoring services).

As of September 15, 2017, sixteen claims have been submitted and no class members has opted out of the Settlement.

## III.   THE SETTLEMENT

## A.   The Settlement Class

Plaintiffs, on behalf of the Settlement Class, and Shorter entered into a Settlement Agreement and Release resolving all claims asserted in the this class action. The Settlement Class is defined as follows:

"Settlement Class" means those students of Shorter University whose Personally Identifiable Information or Protected Health Information was stolen or compromised as a result of the September 2014 theft of hard-copy documents from the training room at the Winthrop-King Centre on Shorter's Rome, Georgia campus.

Excluded from the Settlement Class are: any Opt Outs; Shorter, any entity in which Shorter has a controlling interest, and Shorter's legal representatives, officers, directors, assignees, and successors; anyone who has waived or released any claims against Shorter University regarding the Incident; and any judge to whom this action is assigned, together with any relative of such judge, and the spouse of any such persons. (Settlement Agt., ¶ ).

## B.    Settlement Benefits

## 1.    Cash Settlement Fund

Shorter University, by and through its insurance carrier, has established a $175,000 Settlement Fund from which to make payments to eligible Settlement Class Members and service payments to the Settlement Class Representatives. Ex. 1, at pp. 4-6.   As part of the $175,000 total settlement ("total settlement amount") attorneys' fees, costs, expenses, and the costs of notifying the class and administering the settlement will be paid. *Id.*

## 2.    Identity Guard Monitoring Services

Twelve (12) months of identity protection services through Identity Guard's "Total Protection" package to all Class Members will be funded

from the total settlement amount. Identity Guard's total Protection services are described above.   Ex. 1, at pp 8-9.

## C.      Class Notice and Claims Process

The Parties' Notice Program was composed of direct U.S. mail to members of the Settlement Class.  Notice via direct mail was sent to 932 members of the Settlement Class, representing every class member whose mailing information was available and could be reasonably obtained.  Ex. 2. For notices returned as undeliverable, the Settlement Administrator took all necessary and appropriate steps to find updated address information (such as running the mailing address through the National Change of Address database) to re-mail the notices. Ex. 2.

The Settlement Administrator established a settlement website in the form agreed to by the parties and the Court. In addition to the notices, the website included information about the Settlement, related case documents, and the Settlement Agreement. Class Members are able to submit claims electronically and enroll in Identity Guard identity theft monitoring services online.  Ex. 2.

## D.      Payment of Administrative and Notice Costs

The notice and administrative costs in the amount of $18,000.00 will be paid from the total settlement amount.

**E.    Attorneys' Fees, Costs and Expenses; Service Awards**

Attorneys' fees, costs, and expenses of Class Counsel, subject to Court approval, are $65,000.00 and will be paid from the total settlement amount. As of February 16, 2017, the total advanced and unpaid costs by Class Counsel, and all others who made an appearance in this matter on behalf of the Plaintiffs, is $42,317.84. From the total settlement amount, $1,000.00 will be paid, as an incentive award, to each named Plaintiff for their service as Class Representatives.

**F.    Releases**

Plaintiffs and Class Members will release Defendant from claims relating to the issues in this case.  In turn, Defendant will release Plaintiffs and Class Members from any claims relating to the prosecution or settlement of this matter.

**IV.    ARGUMENT**

**A. The Settlement is Fair, Adequate and Reasonable**

In deciding whether to approve the settlement, the Court must analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Eleventh Circuit has identified six factors to be considered in the analysis:

> (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

*Columbus Drywall*, 258 F.R.D. at 558-59 (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The following analysis of these factors shows the settlement is eminently fair, adequate, and reasonable and thus should be approved.

## B. The Bennett Factors Support Final Approval

### 1. The Settlement Benefits Outweigh the Uncertainty of Success at Trial.

The trial court weighs the first *Bennett* factor, the likelihood of success at trial, "against the amount and form of relief contained in the settlement." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (quoting *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005)). This factor weighs in favor of final approval where "success at trial is not certain for Plaintiff[s]." *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013).

Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. The Court has ruled on Shorter University's motion to dismiss, and has dismissed Plaintiffs' Breach of Implied Contract and Negligent Misrepresentation counts.  More importantly, the benefits of trial were substantially negated when the Court dismissed Plaintiffs'' claims for "earmarked damages" and punitive damages.  Moreover, motions to certify data breach cases do not always clear the net due to potential individualized issues of causation and damages. *See, e.g., In re Hannaford Bros. Co. Customer Data Security Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). The outcome of a trial can never be assumed. *See In re Motorsports*, 112 F. Supp. 2d at 1334 ("[T]he trial process is always fraught with uncertainty."). In short, class litigation sorrows might come not as single spies, but in battalions. The Settlement avoids these uncertainties and provides the Settlement Class with meaningful and certain relief.

### 2. The Settlement is Within the Range of Possible Recoveries and is Fair, Adequate, and Reasonable.

The second and third *Bennett* factors—whether the settlement falls within the range of possible recoveries and is fair, adequate and reasonable—can be considered together. *Burrows*, 2013 WL 10167232, at *6. In considering these factors, "[t]he Court's role is not to engage in a

claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. 2d at 1323; *see also Burrows*, 2013 WL 10167232, at *6 (noting that "even a settlement point below the range of possible recovery may qualify as fair, adequate, and reasonable"). The proposed Settlement provides two primary forms of relief: (1) a cash fund to reimburse monetary losses and lost time; and (2) Identity Guard monitoring services for 12 months. As discussed above, these benefits compare favorably to settlements in other data breach cases that received court approval. *See, e.g., In re Target,* 2015 WL 7253765, at *1; *In re Heartland*, 851 F. Supp. 2d at 1048-1069; *In re Countrywide*, 2009 WL 5184352, at *1-4.

Final approval is appropriate because the proposed Settlement is the product of good faith negotiations between informed counsel. A mediator experienced in complex litigation assisted in the parties' settlement negotiations. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion."). The parties began seriously discussing settlement after they had fully briefed Shorter University's motion to dismiss. Therefore, the parties had devoted significant time to investigating the facts

and legal issues. The parties obtained further information about the merits of the claims and defenses through their extensive discovery conferences. The parties exchanged additional information throughout the course of settlement negotiations and were thus able to closely evaluate the respective merits of their case.

The proposed Settlement is reasonable. The Settlement confers significant monetary benefits and preventative relief in the form of financial account and personal information monitoring services. These benefits compare favorably with those of other settlements in data breach class actions that have been approved by courts. *See, e.g., In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *1 (D. Minn. Nov. 17, 2015) (approving settlement that provided $10 million settlement to pay for losses and time spent as a result of Target data breach, and injunctive relief, but no relief to address future harm); *In re Heartland Payment Sys., Inc. Customer Data Security Breach Litig.*, 851 F. Supp. 2d 1040, 1048-1069 (S.D. Tex. 2012) (approving settlement that provided up to $2.4 million to pay for out-of-pocket losses but no monitoring services); *In re Countrywide Financial Corp. Customer Data Security Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *1-4 (W.D. Ky. Dec. 22, 2009) (approving settlement that provided up to $1.5

million to pay out-of-pocket costs, up to $5 million to pay identity theft losses, and 2 years of free credit monitoring services).

### 3. Continued Litigation Would Be Complex, Expensive, and Lengthy

If not settled, this case inevitably will result in a massive expenditure of time and money by the parties and the Court, as would be true of any class action involving complex facts, such as those here. The parties would move forward with intense fact and expert discovery, followed by briefing on class certification, summary judgment, *Daubert* challenges, a lengthy trial, and appeals. During this process, likely lasting years, the parties will incur significant fees and out-of-pocket expenses, and the Court would spend its own resources.

In contrast, the settlement avoids this outcome; ends the litigation; saves the parties and Court considerable time, effort and money; and provides immediate and substantial relief to the class. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 7, 325-26 & n.32. This factor therefore weighs in favor of final approval.

### 4.   The Substance and Degree of Opposition to the Settlement

There have been no objections to the Settlement and no class members have opted out of the Settlement.  Therefore, this factor weights in favor of final approval.

### 5.   The Stage of Proceedings Allowed Plaintiffs to Evaluate the Merits of the Case and the Settlement Relief

The purpose of this factor is "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Before filing the Complaint, Plaintiffs' Counsel devoted significant time to investigating the facts related to the data breach and Shorter University's subsequent response. Counsel also extensively researched potential. After filing the Complaint, Counsel opposed the motion to dismiss, undertook written discovery and conducted depositions and engaged in extensive negotiations with Shorter University's counsel. This work, combined with their experience in successfully prosecuting similar data breach cases, gave Plaintiffs' Counsel the necessary leverage to negotiate the best relief possible for the Class. Like the other *Bennett* factors, this factor weighs in favor of final approval.

In short, all of the factors that the Eleventh Circuit has instructed be used to evaluate the fairness of a settlement support approval here

## C. The Court Should Certify the Proposed Settlement Class

Plaintiffs explained in their preliminary approval motion how the settlement class meets all of the requirements of Rule 23(a) and (b)(3). In its order preliminarily approving the settlement, the Court agreed with Plaintiffs and conditionally certified the settlement class. Nothing has changed regarding the Rule 23 factors since that order was entered.

The settlement class satisfies the four requirements of Rule 23(a). First, Settlement Class, which consists of approximately 900 Shorter University students who had their PHI and PII stolen or compromised, is so numerous that joinder of all members is impracticable.  Second, there are numerous common questions of law and fact, including the overarching questions of whether (1) whether Shorter University failed to adequately protect Settlement Class Members' personal and financial information; (2) whether Shorter University's conduct constituted negligence and (3) whether Shorter University breached a fiduciary duty to adequately protect Settlement Class Members' personal information. Third, the class representatives' claims are typical of the other class members' claims and all arise from the same course of conduct and assert the same legal theories. And, fourth, the class representatives and Class Counsel have and will adequately and fairly protect the interests of the class

The settlement class also satisfies the requirements of Rule 23(b)(3). The questions of law and fact common to all class members predominate over questions affecting only individual members. All class members are similarly situated and were injured in the same or similar ways. Every class member's claim thus can be proved by common evidence focusing on Home Depot's conduct. Moreover, a class action is the superior method of adjudication. Accordingly, the Rule 23 factors having been met, Plaintiffs request that the Court confirm its preliminary decision and finally certify the settlement class.

### D. The Notice Program, As Implemented, Satisfied Due Process and Rule 23.

In its preliminary approval order, the Court approved the notice program, found that it met the requirements of due process and Rule 23, and directed that it be carried out. Since entry of the Court's order, the notice program was carried out under the supervision of the parties by Epiq, a nationally-recognized firm appointed to be the settlement administrator. Declaration of the Settlement Administrator (Exhibit 2).  Accordingly, the notice program provided individual notice to Settlement Class Members who could reasonably be identified from Shorter University's records. The Settlement Administrator also established a settlement website in the form

agreed to by the parties and the Court. In addition to the notices, the website included information about the Settlement, related case documents, and the Settlement Agreement. *Id.*

In addition, the notice itself was understandable, described the litigation, set forth the terms of the settlement, and contained all of the information reasonably necessary for a class member to exercise its rights.

Accordingly, the Court should find that the class was provided with the best notice practicable under the circumstances and that the notice program, as implemented, satisfies the requirements of due process and Rule 23. *See, e.g., Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 121 (8th Cir. 1975), *cert. denied,* 423 U.S. 864 (1975) (individualized mail notice sufficient when class members can be identified); *Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *6 (M.D. Fla. Nov. 19, 2009) (approving notice by first class mail to most recent known address); *In re Checking,* 2014 WL 11370115 at * 7-8.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs request that their motion be granted.

Dated:  September 22, 2017       Respectfully submitted,

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**

<u>/s/ *John Yanchunis*</u>
John A. Yanchunis
Rachel L. Soffin
Georgia Bar No. 255074
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jyanchunis@forthepeople.com
rsoffin@forthepeople.com


**MORGAN & MORGAN, PLLC**
Andrew Lee Hagenbush
Georgia Bar No. 127945
P.O. Box 57007
191 Peachtree Street, NE
Suite 4200
Atlanta, GA 30343-1007
Telephone: (404) 965-1782
Facsimile: (404) 496-7352
ahagenbush@forthepeople.com


**RHINE LAW FIRM, P.C.**
Joel Rhine
jrr@rhinelawfirm.com
1612 Military Cutoff
Suite 300
Wilmington, NC 28403
910.772.9960

**LAW OFFICES OF PAUL C.
WHALEN, P.C.**
Paul C. Whalen (PW 1300)*
768 Plandome Road
Manhasset, NY 11030
Telephone: (516) 426-6870
Facsimile : (212) 658-9685


**JONES WARD PLC**
Jasper D. Ward IV (92160KY)*
Alex C. Davis (94899KY)*
Marion E. Taylor Building
312 South Fourth Street, Sixth Floor
Louisville, Kentucky 40202
P: (502) 882- 6000
F: (502) 587-2007
jasper@jonesward.com
alex@jonesward.com


**AHDOOT & WOLFSON, PC**
Tina Wolfson*
Robert Ahdoot*
Bradley King*
1016 Palm Avenue
West Hollywood, CA 90069
Tel: (310) 474-9111
Fax: (310) 474-8585
Email: twolfson@ahdootwolfson.com
Email: rahdoot@ahdootwolfson.com
Email: bking@ahdootwolfson.com


*Attorneys for Plaintiffs
and the Proposed Class*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this day September 22, 2017, I served the above and foregoing on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which automatically sends a copy to all counsel of record.

*/s/ John A. Yanchunis*
John A. Yanchunis, Esq.
